**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------X
                                                                    :

GWENDOLYN CLARK,                           :        CIVIL ACTION

                                        Plaintiff,    :        Case No.:

               -against-                     :       **COMPLAINT**

HEMPHILL ARTWORKS, LLC d/b/a HEMPHILL   :
FINE ART, GEORGE HEMPHILL, MNUCHIN      :
GALLERY, LLC, JOHN DOES 1-5, and               :
ABC CORPS. 1-5,                                   :

                                      Defendants,  :

"DOGWOOD BLOSSOM ALONG SKYLINE        :
 DRIVE", 1973, oil on canvas (60 x 54 in),        :
by Alma Thomas,                                     :

                               Defendant-in-rem.  :

---------------------------------------------------------------------X

       Plaintiff, GWENDOLYN CLARK, by and through her attorneys CARTER REICH, PC, as and for her Complaint against Defendants, HEMPHILL ARTWORKS, LLC d/b/a HEMPHILL FINE ART, GEORGE HEMPHILL, MNUCHIN GALLERY, LLC, JOHN DOES 1-5, ABC CORPS 1-5, and DOGWOOD BLOSSOM ALONG SKYLINE DRIVE, 1973, oil on canvas (60 x 54 in), by Alma Thomas (hereinafter the "Artwork" or "Defendant-in-rem"), alleges and asserts in support thereof, based upon information and belief, as follows:

1

**PRELIMINARY STATEMENT**

1.      This is an *in-rem* action seeking a declaration that Plaintiff is the 50% owner of all right, title and interest in the Artwork and replevin of the Artwork from an unknown possessor, and for damages and disgorgement of profits from Defendants for their improper conversion of Plaintiff's stolen property, fraud, and fraudulent concealment.

2.      Defendants will attempt to paint Plaintiff as an opportunist who did not care about the Artwork until the artist became highly sought after. However, this narrative falls apart under a modicum of scrutiny. Plaintiff has been dogged in her quest to locate and recover the Artwork she co-owned with her late husband.

**JURISDICTION & VENUE**

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between Plaintiff, a citizen of Virginia, and Defendants, who either citizens of, or incorporated to do business in, Washington DC and New York. The amount in controversy exceeds $75,000, exclusive of costs.

4.      This Court has personal jurisdiction over Defendants pursuant to New York CPLR §§ 301 and 302(a) because Defendants transacted business in the Southern District of New York giving rise to the claims asserted herein.

5.      This Court is authorized by Rule 4(n) of the Federal Rules of Civil Procedure, as well as 28 U.S.C. § 1665, and NY CPLR § 7109(b) to exercise *in-rem* jurisdiction over the Artwork, declare that 50% of all right, title, and interest in the Artwork is vested in Plaintiff, and to order its return to Plaintiff.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a), (b) and (c) because Defendant, MNUCHIN GALLERY, LLC, is a corporation located in the Southern District of New York, and, upon information and belief, the current possessor of the Artwork resides in the Southern District of New York and/or the Artwork is presently located in the Southern District.

## PARTIES

7. Plaintiff, GWENDOLYN CLARK (hereinafter "Plaintiff"), is an adult resident of the State of Virginia.

8. Defendant, HEMPHILL ARTWORKS, LLC d/b/a HEMPHILL FINE ARTS (hereinafter "HFA"), is a business incorporated under the laws of Washington, D.C., with its principal place of business located at 434 K Street NW, Washington, DC 20001.

9. Defendant, GEORGE HEMPHILL (hereinafter "HEMPHILL"), is an adult resident of the District of Columbia and the owner of HFA.

10. Defendant, MNUCHIN GALLERY, LLC ("MNUCHIN") is a business incorporated under the laws of New York, with its principal place of business located at 45 East 78th Street, New York, New York.

11. Defendants, "JOHN DOES 1-5", inclusive, are individuals whose true names and capacities are unknown to Plaintiff, who therefore sues such Defendants by such fictitious names, and who will amend the Complaint to show the true names and capacities of each such Defendant when ascertained.

12. Defendants, "ABC CORPS. 1-5", inclusive, are businesses and/or corporate entities whose true names and capacities are unknown to Plaintiff, who therefore sues such Defendants by

such fictitious names, and who will amend the Complaint to show the true names and capacities of each such Defendant when ascertained.

## FACTS

13. Plaintiff purchased the Artwork on or about May 12, 1976, direct from the Artist via the Franz Bader Gallery in Washington, DC, along with her late husband, Wallace Clark.

14. The sales invoice from Franz Bader Gallery lists "Mr. & Mrs. Wallace Clark" as the purchasers.

15. Plaintiff's marriage deteriorated over the next several years and Plaintiff was frequently kicked and battered by her husband who threatened her with death and serious bodily harm causing her to flee from the marital home with their young daughter.

16. In the fall of 1981 Plaintiff had no choice but to separate from her husband to live safely and raise their young daughter.

17. Prior to their separation, as the marriage began to deteriorate, Plaintiff's husband removed the Artwork from the marital home without Plaintiff's permission.

18. A Consent Order entered in the Superior Court of the District of Columbia, Family Division, dated February 19, 1982, directed, among other things, that the jointly-owned Artwork be returned to the martial home, but Plaintiff's husband never complied and Plaintiff had almost no contact with her abusive husband after their separation.

19. Plaintiff was understandably afraid of her husband and under duress. Furthermore, while he never complied with the Consent Order he would sporadically send small amounts of money to Plaintiff, which she desperately needed to survive.

20. The Artwork has great sentimental value to Plaintiff, as it did to her husband, who was an artist and musician. As such, Plaintiff was certain that her husband still had possession of the Artwork.

21. Plaintiff's husband passed away in 2008. Plaintiff instructed her daughter to look for the Artwork at her husband's home, but she could not locate it.

22. Unbeknownst to Plaintiff and without her permission, her husband consigned the Artwork back to Franz Bader Gallery on or about October 25, 1983 - while he was subject to and in default of the aforementioned Consent Order to return the jointly-owned Artwork to the marital home.

23. Plaintiff spent over 25 years visiting art galleries in Washington D.C. and making inquiries about the Artwork to no avail.

24. The whereabouts of the Artwork remained unknown until Plaintiff's extensive efforts to locate the Artwork brought her to a chance meeting with Defendants HEMPHILL and HFA.

25. In or around January 2016, Plaintiff was introduced to Mary Early, a Senior Staff Assistant at HFA. Plaintiff shared the story of the Artwork and how it was improperly taken from her. Ms. Early informed Plaintiff that the Franz Bader Gallery archives are available at the Smithsonian American Art Museum ("SAAM"). Ms. Early offered to help Plaintiff and Plaintiff graciously welcomed the assistance of a gallery like HEMPHILL in her search.

26. In or around June 2016, Ms. Early sent Plaintiff copies of SAAM archival material pertaining to the Artwork, which were unfortunately inconclusive.

27. Due to health reasons, Plaintiff was unable to personally visit the SAAM archives until late 2018, at which time retrieved additional documentation that also proved inconclusive.

28. On numerous occasions, Plaintiff conducted internet searches in an attempt to gather some leads to the whereabouts of the painting, but all efforts proved fruitless.

29. It was around this time that Plaintiff's daughter learned from an online search that the Artwork had been offered for auction in June 1990 at Weschler's Auction House in the Washington, DC area, but had not been sold.

30. Plaintiff contacted a senior employee at the auction house only to be told that at the time of the auction in 1990, the auction house records had not been digitized and consequently the information about the Artwork is not otherwise available.

31. In January 2019, MNUCHIN contacted Plaintiff's daughter by mail inquiring if the Artwork was still in her father's collection. Plaintiff's daughter immediately contacted MNUCHIN and informed them that the Artwork was never just in her father's collection, rather it was in her father's and mother's collection, as they had purchased it together. She relayed that her father had taken the Artwork from the family home without her mother's consent and her mother had been looking for the Artwork for many, many years.

32. Plaintiff's daughter communicated to MNUCHIN that her father had died in 2008, nevertheless, she and Plaintiff were still seeking information about the whereabouts of the Artwork. During the conversation, Plaintiff's daughter asked how they found her and was told that MNUCHIN has great researchers. Upon hearing this, she asked if they could work together to find the Artwork but MNUCHIN refused to provide assistance.

33. Later in January 2019, while attending the "Soul of a Nation" exhibition at the Brooklyn Museum, Plaintiff visited several galleries, including the Michael Rosenfled Gallery. She relayed her story about the Artwork to Michael Rosenfled who immediately searched for the Artwork online but found nothing useful. Rosenfled suggested that Plaintiff register the Artwork with the Art Loss Register, which she did. He also said that he would notify the Plaintiff if he learned the whereabouts of the Artwork.

34. On January 29, 2019, Plaintiff obtained a conditional registration for the Artwork from the Art Loss Registry bearing registration number R00013028.

35. After Plaintiff submitted additional documentation, the registration status was changed from conditional to "Registered" on or about April 26, 2019.

36. On or about August 27, 2019, Plaintiff was contacted by the Art Loss Registry and informed that a painting by Alma Thomas with the same title was searched by an art gallery in the United States and requesting additional information to confirm if it is the same painting.

37. Before Plaintiff could respond to the Art Loss Registry, she was contacted by Michael Rosenfled on or about September 3, 2019, who informed her that the Artwork was in New York and was slated to open in an exhibition the following week at MNUCHIN.

38. The following day, Plaintiff's daughter contacted MNUHCIN who apologized for not contacting her and offered to pull the Artwork from the exhibition. Plaintiff's daughter responded that she would let the Plaintiff decide whether to pull the Artwork.

39. On or about September 5, 2019, Plaintiff went to HFA to thank Mary Early for her support over the years and to inform her that the Artwork had surfaced in New York at MNUCHIN. Surprisingly, she and HEMPHILL informed Plaintiff that they were advised by

7

their lawyer not to talk with her but given that they knew the Plaintiff they wanted to "come clean." HEMPHILL then informed Plaintiff that HFA actually sold the Artwork and subsequently consigned it to MNUCHIN.

40. Plaintiff was speechless, as she thought HFA and HEMPHILL had been actively trying to help her recover the Artwork. When pressed about the Artwork, HEMPHILL said that a long-time client came to him in June 2019 requesting assistance in selling the Artwork and that his client informed him that he had acquired the painting in the late 70s and it was titled "Leaves over Shenandoah." However, HEMPHILL admitted that when he examined the Artwork after it arrived at HFA, he saw that it bore the title of the Artwork "Dogwood Blossom Along Skyline Drive" on the verso.

41. When Plaintiff asked HEMPHILL what his client presented as proof of ownership of the Artwork, he hesitated and said, "He showed me something on a brown piece of paper." After Plaintiff pointed out that the Artwork had not left her home until the early 1980s, HEMPHILL changed the date and simply said it was a "colorful story."

42. HEMPHILL repeatedly refused to provide Plaintiff with clear and accurate information about the Artwork, which he is clearly in possession of, and refused to provide Plaintiff with the identity of the possessor citing client confidentiality.

43. Plaintiff's daughter contacted MNUCHIN, informing them that her mother would like the matter resolved before any showing or sale of the Artwork.

44. On September 9, 2019, Plaintiff's daughter received correspondence from an attorney claiming to represent the anonymous lender of the Artwork to MNUCHIN. The attorney for the lender took the position that their client has clear title to the Artwork; their client

purchased it from HFA; and therefore, their client can display and transfer the work at their discretion.

45. More importantly, the attorney for the anonymous lender threatened Plaintiff with litigation for even asserting her rights, stating that doing so would have a negative affect on the value of the Artwork, which the attorney claimed would be directly attributable to Plaintiff.

46. Negotiations broke down shortly thereafter and to date Plaintiff does not know the identity of the current possessor.

## COUNT ONE
## (DECLARATORY JUDGMENT)

47. Plaintiff incorporates by reference all of the averments contained in Paragraphs "1" through "46", as if fully set forth herein.

48. Plaintiff is the rightful owner of 50% of all right, title, and interest in the Artwork and is entitled to the immediate possession of the Artwork.

49. Plaintiff's claim of 50% ownership and right to possess the Artwork creates an actual controversy with Defendants over ownership of the Artwork.

50. By reason of the foregoing, Plaintiff is entitled to a judgment pursuant to 28 U.S.C. 1655 and 28 U.S.C. 2201, et seq., declaring that 50% of all right, title, and interest in the Artwork is vested in Plaintiff.

## COUNT TWO
## (REPLEVIN)

51. Plaintiff incorporates by reference all of the averments contained in Paragraphs "1" through "50" as if fully set forth herein.

52. Plaintiff is the owner of 50% of all right, title, and interest in the Artwork and entitled to recover possession of the Artwork.

53. Plaintiff is currently unable to demand that the Artwork be returned because Plaintiff does not know the identity of the current possessor.

54. Defendants, HEMPHILL, HFA, and MNUCHIN, having sold, consigned and/or exhibited the Artwork, know the identity of the possessor but refused to disclose it to Plaintiff.

55. Plaintiff will make a demand upon the current possessor, Defendant(s) John Doe or ABC Corp, once Plaintiff learns the possessor's identity.

56. Plaintiff otherwise has no adequate remedy at law.

57. By reason of the foregoing, Plaintiff is entitled to the immediate return of the Artwork.

## COUNT THREE
### (CONVERSION – as against Defendants, HFA and MNUCHIN)

58. Plaintiff incorporates by reference all of the averments contained in Paragraphs "1" through "57" as if fully set forth herein.

59. Plaintiff is the owner of 50% of all right, title, and interest in the Artwork and entitled to immediate possession of the Artwork.

60. Defendants, HFA and MNUCHIN, bought, sold, transferred, consigned, and/or exhibited the Artwork after learning that Plaintiff claimed ownership and had been searching for the Artwork for many years.

61. Defendants nonetheless converted the Artwork in complete disregard and derogation of the Plaintiff's right, title, and interest to the Artwork.

62. By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT FOUR
## (FRAUD & FRAUDULENT CONCEALMENT
## - as against Defendants HEMPHILL and HFA)

63. Plaintiff incorporates by reference all of the averments contained in Paragraphs "1" through "62" as if fully set forth herein.

64. In January 2016, Defendants HEMPHILL and HFA promised to help Plaintiff in locating the Artwork and even searched the SAAM archives in furtherance of that promise.

65. Sometime thereafter, HEMPHILL and HFA learned material information regarding the Artwork and converted the Artwork for their own benefit.

66. Defendants HEMPHILL and HFA failed to disclose to the Plaintiff that they knew the identity of the possessor, had sold the Artwork, and then subsequently consigned it to MNUCHIN.

67. Defendants HEMPHILL and HFE deliberately and intentionally withheld this material information from the Plaintiff because they knew Plaintiff was asserting a claim of ownership that would interfere with their ability to consign and sell the Artwork on behalf of the possessor.

68. Defendant HEMPHILL admitted as much when he decided to "come clean" to Plaintiff on September 5, 2019.

69. However, since that time, rather than take responsibility Defendant HEMPHILL has continued to make false and misleading statements to Plaintiff regarding the Artwork, and he refuses to identify the possessor for the sole purpose of obstructing Plaintiff's efforts.

70. Plaintiff justifiably relied on the expertise of Defendants HEMPHILL and HFA in the art world and believed their sincerity in wanting to help her.

71. Plaintiff has suffered damages as a result of the fraudulent acts and concealment of Defendants HEMPHILL and HFA.

72. By reason of the foregoing, Defendants HEMPFILL and HFA are liable in an amount to be determined at trial, plus punitive damages, attorney's fees, and costs, as well as any equitable relief deemed appropriate by the court.

## COUNT FIVE
### (UNJUST ENRICHMENT – as against Defendants HFA and MNUCHIN)

73. Plaintiff incorporates by reference all of the averments contained in Paragraphs "1" through "72" as if fully set forth herein.

74. Defendants HFA and MNUCHIN received substantial monies in connection with the purchase, sale, transfer, and /or consignment of the Artwork after learning of Plaintiff's claim of 50% ownership.

75. That by reason of the foregoing, it would be against equity and good conscience to permit the Defendants to retain the benefits of any purchase, sale, transfer, and/or consignment.

## CONCLUSION AND DEMAND

**WHEREFORE,** Plaintiff, GWENDOLYN CLARK, demands judgment as follows:

A. On Count One, a Declaratory Judgment that Plaintiff is the 50% owner of all right, title, and interest in the Artwork;

B. On Count Two, awarding possession of the Artwork to Plaintiff;

C. On Count Three, awarding damages to the Plaintiff in an amount to be determined at trial;

D. On Count Four, awarding damages to the Plaintiff in an amount to be determined at trial, plus punitive damages interest and attorney's fees;

E. On Count Five, awarding damages to the Plaintiff in an amount to be determined at trial; and,

F. Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 2, 2022

**CARTER REICH, PC**

By:   */s/ Carter A. Reich*
Carter A. Reich, Esq.
*Attorneys for Plaintiff*
GWENDOLYN CLARK
246 5th Avenue, Suite 508
New York, New York 10001
(917) 615-0978
creich@reich.legal

Defendants:
HEMPHILL ARTWORKS LLC
d/b/a HEMPHILL FINE ARTS
434 K Street NW
Washington, DC 20001

GEORGE HEMPHILL
4862 Reservoir Road
Washington, DC 20007

MNUCHIN GALLERY, LLC
45 East 78th Street
New York, NY 10075